# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**BRANDY WALLACE, as the Personal Representative**
**of the Estate of Ronald Wesley Sexton,**

       **Plaintiff,**              **CASE NO: 8:14-CV-03022-T-24-AEP**

**v.**

**OFFICER NICOLO MANGIARACINA, individually**
**and as a member of St. Petersburg Police Department;**
**OFFICER JUSTIN MORALES, individually**
**and as a member of St. Petersburg Police Department;**
**OFFICER MICHAEL ROMANO, individually**
**and as a member of the St. Petersburg Police Department;**
**CHIEF ANTHONY HOLLOWAY,**
**St. Petersburg Police Department Chief,**
**in his official capacity,**
**CITY OF ST. PETERSBURG d/b/a**
**CITY OF ST. PETERSBURG POLICE DEPARTMENT.**

       **Defendants.**

_____/

## COURT'S INSTRUCTIONS
## TO THE JURY

Members of the Jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

## The Duty to Follow Instructions—Government
## Entity or Agency Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

## Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

## Impeachment of Witnesses Because of
## Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## Responsibility for Proof—Plaintiff's Claims—Preponderance of the Evidence

In this case it is the responsibility of the Plaintiff to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims by a preponderance of the evidence, you should find for the Defendant as to that claim.

## Responsibility for Proof—Affirmative Defense
## Preponderance of the Evidence

In this case, the Defendants assert the affirmative defense of intoxication as to the Plaintiff's state law wrongful death claim. Even if the Plaintiff proves her wrongful death claim by a preponderance of the evidence, the Defendants can prevail on the wrongful death claim if they prove the affirmative defense of intoxication by a preponderance of the evidence.

I caution you that the Defendants do not have to disprove the Plaintiff's wrongful death claim, but if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

## Introduction of this Case

Brandy Wallace, as the personal representative of the estate of Ronald Sexton, sues Officer Mangiaracina, Officer Morales and Officer Romano, of the St. Petersburg Police Department, for the use of excessive force in violation of the Fourth Amendment of the United States Constitution on September 2, 2013 when the officers fatally shot Ronald Sexton. She also sues Officer Mangiaracina, Officer Morales, Officer Romano, and the City of St. Petersburg for a state law wrongful death claim stemming from the confrontation on September 2, 2013. The Defendants deny the use of excessive force and liability on all claims. The separate but related state law wrongful death claim must be decide on its own merit using the applicable state law, regardless of how you decide the federal constitutional claims.

## Civil Rights—42 U.S.C. § 1983 Claims

In this case, Brandy Wallace, as Personal Representative of the Estate of Ronald Sexton, claims that Officer Mangiaracina, Officer Morales and Officer Romano, while acting under color of law, intentionally deprived Ronald Sexton of his rights under the United States Constitution.

Specifically, Brandy Wallace claims that while Officer Mangiaracina, Officer Morales and Officer Romano were acting under color of law as a members of the St. Petersburg Police Department, Officer Mangiaracina, Officer Morales and Officer Romano intentionally committed acts that violated Ronald Sexton's constitutional right to be free from the use of excessive or unreasonable force during an arrest.

Under the Fourth Amendment to the United States Constitution, every person has the right not to be subjected to excessive or unreasonable force while being arrested by a law enforcement officer—even though the arrest is otherwise made in accordance with the law.

A person may sue in this court for an award of money damages against anyone who, under color of law, intentionally commits acts that violate the person's rights under the United States Constitution.

To succeed on these claims, Brandy Wallace must prove each of the following facts by a preponderance of the evidence:

First.    That Officer Mangiaracina, Officer Morales and/or Officer Romano intentionally committed acts that violated Ronald Sexton's federal constitutional right not to be subjected to excessive or unreasonable force during an arrest;

Second.    That Officer Mangiaracina, Officer Morales and/or Officer Romano acted under color of law; and

Third.    That Officer Mangiaracina's, Officer Morales' and/or Officer Romano's conduct caused Ronald Sexton's injuries.

Brandy Wallace claims that Officer Mangiaracina, Officer Morales and Officer Romano used excessive force when arresting Ronald Sexton. Every person has the constitutional right not to be subjected to excessive or unreasonable force while being arrested by a law enforcement officer—even though the arrest is otherwise lawful. But in making a lawful arrest, an officer has the right to use reasonably necessary force to complete the arrest. Whether a specific use of force is excessive or unreasonable depends on factors such as the crime's severity, whether a suspect poses an immediate violent threat to others, and whether the suspect resists or flees.

An officer's use of force is excessive under the Fourth Amendment if the use of force was objectively unreasonable in light of the facts and circumstances confronting the officer. The totality of the circumstances must be considered, and the test of reasonableness requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Reasonableness is judged from the perspective of the reasonable officer on the scene without the benefit of hindsight. This standard allows for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

You must decide whether the force Officer Mangiaracina, Officer Morales and/or Officer Romano used in making the arrest was excessive or unreasonable based on the degree of force a reasonable and prudent law enforcement officer would have applied in making the arrest under the same circumstances. Officer Mangiaracina's, Officer Morales and Officer Romano's underlying intent or motivation is irrelevant.

For the second element, the parties have agreed that Officer Mangiaracina, Officer Morales and Officer Romano acted under color of law. So you should accept that as a proven fact.

For the third element, Officer Mangiaracina's, Officer Morales' and/or Officer Romano's conduct caused Ronald Sexton's injuries if Ronald Sexton would not have been injured without Officer Mangiaracina's, Officer Morales' and/or Officer Romano's conduct, and the injuries were a reasonably foreseeable consequence of Officer Mangiaracina's, Officer Morales' and Officer Romano's conduct.

Each Defendant's actions must be considered separate from the other Defendants. You may assess damages against one defendant and not the others or against more than one defendant.

If you find in Brandy Wallace's favor for each fact that she must prove, you must decide the issue of her compensatory damages. To recover compensatory damages Brandy Wallace must prove by a preponderance of the evidence that she would not have been damaged without Officer Mangiaracina's, Officer Morales' and/or Officer Romano's conduct, and the damages were a reasonably foreseeable consequence of Officer Mangiaracina's, Officer Morales' and/or Officer Romano's conduct.

You should assess the monetary amount that a preponderance of the evidence justifies as full and reasonable compensation for all of Brandy Wallace's damages—no more, no less. You must not impose or increase these compensatory damages to punish or penalize Officer Mangiaracina, Officer Morales and/or Officer Romano. And you must not base these compensatory damages on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Brandy Wallace has proved them by a preponderance of the evidence, and no others:

a)    Funeral Expenses for Ronald Sexton;

b)    Loss of Earnings of Ronald Sexton;

**Punitive Damages:** Brandy Wallace also claims that Officer Mangiaracina's, Officer Morales' and Officer Romano's acts were done with malice or reckless indifference to Ronald Sexton's federally protected rights, which would entitle Brandy Wallace to an award of punitive damages in addition to compensatory damages. Brandy Wallace must prove by a preponderance of the evidence that she is entitled to punitive damages.

If you find for Brandy Wallace and find that Officer Mangiaracina, Officer Morales and/or Officer Romano acted with malice or reckless indifference to Ronald Sexton's federally protected rights, the law allows you, in your discretion, to award Brandy Wallace punitive damages as a punishment for Officer Mangiaracina, Officer Morales and Officer Romano and as a deterrent to others.

Officer Mangiaracina, Officer Morales and Officer Romano act with malice if their conduct is motivated by evil intent or motive. Officer Mangiaracina, Officer Morales and Officer Romano act with reckless indifference to the protected federal rights of Ronald Sexton when

Officer Mangiaracina, Officer Morales and Officer Romano engage in conduct with a callous disregard for whether the conduct violates Ronald Sexton's protected federal rights.

If you find that punitive damages should be assessed, you may consider the evidence regarding Officer Mangiaracina's, Officer Morales' and Officer Romano's financial resources in fixing the amount of punitive damages to be awarded. You may also assess punitive damages against one or more of the individual Defendants, and not others, or against one or more of the individual Defendants in different amounts.

## Wrongful Death against the City of St. Petersburg

The Plaintiff also claims that the Officer's Mangiaracina, Officer Romano and Officer Morales caused the wrongful death of Ronald Sexton under Florida state law. The City of St. Petersburg may be liable for any damage that is the result of an act, event, or omission of its officers that is done in the course and scope of their employment. Here, there is no dispute that Officer Mangiaracina, Officer Romano and Officer Morales were acting within the course and scope of their employment.

To establish a wrongful death claim against the City of St. Petersburg, the Plaintiff must prove the following elements by a preponderance of the evidence:

1. The conduct of Officer Mangiaracina, Officer Morales and/or Officer Romano amounted to a wrongful act or negligence;

2. That this conduct caused the death of Ronald Sexton; and

3. The conduct would have entitled Ronald Sexton to recover damages if he had not died.

## Law enforcement officers; use of force in making arrest

A law enforcement officer need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest.

## Use or threatened use of force in resisting arrest or making an arrest or in the execution of a legal duty; prohibition.

A person is not justified in the use or threatened use of force to resist an arrest by a law enforcement officer, or to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith and he or she is known, or reasonably appears, to be a law enforcement officer.

## Intoxication Defense

When deciding Brandy Wallace's state law wrongful death claim, she may not recover any damages if you find from a preponderance of the evidence that, at the time Ronald Sexton was fatally shot:

(a) Ronald Sexton was under the influence of any alcoholic beverage or drug to the extent that his normal faculties were impaired or that Ronald Sexton had a blood or breath alcohol level of 0.08 percent or higher; and

(b) As a result of the influence of such alcoholic beverage or drug Ronald Sexton was more than 50 percent at fault for his own harm.

## Damages: Introduction

If your verdict on Plaintiff's wrongful death claim is for Defendants, you will not consider the matter of damages. But if a preponderance of the evidence supports Brandy Wallace's wrongful death claim and does not support Defendants' intoxication defense, you should determine and write on the verdict form, in dollars, the total amount of damages which the preponderance of the evidence shows the estate of Ronald Sexton and his survivors sustained as a result of his death, including any damages that the estate and the survivors are reasonably certain to incur or experience in the future.

Any damages that you find were sustained by Ronald Sexton's estate and by Joshua Sexton, his child, Vicki Sexton, his mother, and/or John Sexton, his father, shall be separately stated in your verdict.

## Damages: Elements for Estate and Survivors

*ELEMENTS FOR ESTATE:*

In determining the damages recoverable on behalf of Ronald Sexton's estate, you shall consider the funeral expenses due to Ronald Sexton's death which were paid by or on behalf of Ronald Sexton by one other than Ronald Sexton's survivors—Joshua Sexton, Vicki Sexton and/or John Sexton.

*ELEMENTS FOR SURVIVING*
*CHILD OR PARENTS OF RONALD SEXTON:*

In determining any damages to be awarded Ronald Sexton's personal representative for the benefit of Ronald Sexton's surviving child, Joshua Sexton, or parents, Vicki Sexton and John Sexton, you shall consider certain additional elements of damage for which there is no exact standard for fixing the compensation to be awarded. Any such award should be fair and just in the light of the evidence regarding the following elements:

*Damages by surviving child, Joshua Sexton:*

The loss by Joshua Sexton of parental companionship, instruction and guidance, and his mental pain and suffering as a result of Ronald Sexton's injury and death. In determining the duration of those losses, you may consider the joint life expectancy of Ronald Sexton and Joshua Sexton together with the other evidence in the case.

Joshua Sexton's loss, by reason of Ronald Sexton's injury and death, of Ronald Sexton's support and services. In determining the duration of any future loss, you may consider the period of minority, ending at age 25, of a healthy minor child.

In evaluating past and future loss of support and services, you shall consider Joshua Sexton's relationship to Ronald Sexton, the amount of Ronald Sexton's probable net income

available for distribution to Joshua Sexton and the replacement value of Ronald Sexton's services to Joshua Sexton. "Support" includes contributions in kind as well as sums of money. "Services" means tasks regularly performed by Ronald Sexton for Joshua Sexton that will be a necessary expense to Joshua Sexton because of Ronald Sexton's death.

*Damages by surviving parents of Ronald Sexton, Vicki and John Sexton:*

The mental pain and suffering of Vicki and John Sexton as a result of the injury and death of Ronald Sexton. In determining the duration of mental pain and suffering, you may consider the life expectancies of Vicki and John Sexton together with the other evidence in the case.

## Mortality Tables

In determining how long Ronald Sexton would have lived, had he lived out his normal life, you may consider his life expectancy at the time of his death. The mortality tables received in evidence may be considered in determining how long he may have been expected to live. Mortality tables are not binding on you but may be considered together with other evidence in the case bearing on his health, age and physical condition, before his death, in determining the probable length of his life.

In determining the duration of any future loss sustained by Joshua Sexton, Vicki Sexton and John Sexton by reason of the death of Ronald Sexton, you may consider the joint life expectancy of Joshua Sexton, Vicki Sexton and John Sexton and Ronald Sexton. The joint life expectancy is that period of time when both the decedent and a survivor would have remained alive. The mortality tables received in evidence may be considered in determining how long each may have been expected to live.

## Duty to Deliberate When Only the Plaintiff
## Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges— judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## Notes Instruction

In this case you have been permitted to take notes during the course of the trial, and most of you—perhaps all of you —have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.

## Election of Foreperson Explanation of Verdict
## Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible— either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.